IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WILLIAM TOLSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:07CV381 |
| | ) | |
| PENDERGRASS, Orange County | ) | |
| Sheriff, JENKINS, Orange County | ) | |
| Sheriff's Deputy, LT. LANKFORD, | ) | |
| Head Jailer, OFFICER DURHAM, | ) | |
| Detention Officer, PITTMAN, | ) | |
| Detention Officer, MS. WILLIAMS, | ) | |
| Physician's Assistant, SARA, | ) | |
| Emergency Care Unit Nurse, and | ) | |
| DURHAM REGIONAL HOSPITAL, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff William Tolson, a federal inmate who was housed in the Orange County Jail as a federal pretrial detainee, filed this action pursuant to 42 U.S.C. § 1983, claiming several violations of his constitutional rights by Defendants. As Defendants, Plaintiff Tolson named Orange County Sheriff Pendergrass;[1] Deputy Jenkins; Jailers Lankford, Durham, and

---

[1] On October 4, 2007, Plaintiff amended his original designation of "Sheriff Pennington" to "Sheriff Pendergrass." The amendment was effective by operation of law, Rule 15(a)(1), without court order.

Pittman; Jail Nurse "Ms. Williams"; Durham Regional Hospital; and "Nurse Sara."  All Defendants have responded to the complaint with motions to dismiss.  (Docket Nos. 34, 35, and 38)  Plaintiff Tolson has responded in opposition to the motions to dismiss.  Plaintiff has also filed a motion for summary judgment in his favor.  (Docket No. 45).

## The Complaint

*Pro se* Plaintiff Tolson states in his complaint that he had a medical emergency on March 9, 2007, in the Orange County Jail.  (Docket No. 2, Complaint ("Compl.").)  He was receiving cold medicine at the time and was also taking an anxiety medication, Ativan.  Officer Pittman dispensed the medications.  Plaintiff states that he became sick around 5 to 7 p.m.  He hallucinated and was dizzy; he came out of his cell without clothes on, sang, preached, danced, and passed out.  When he came to, he was strapped to a gurney, placed in an ambulance, and taken to Durham Regional Hospital.  At the hospital, Defendant "Nurse Sara" was hostile and combative and persuaded Deputy Jenkins to apply more and more pressure on Plaintiff's restraints while she forced a needle into Plaintiff's left arm, started an IV, and inserted a catheter.  According to the complaint, Deputy Jenkins ridiculed Plaintiff and forcefully tightened his ankle bracelets, leaving a 3-inch bruise and lacerations on his ankles.  Deputy Jenkins tightened the belt restraints in order to keep Plaintiff from moving.  Plaintiff states, "I did not want to take the needles for I saw no reason for them to do so."  Deputy Jenkins and another officer continued to tighten the restraints.  (*Id*. § V.)

-2-

Plaintiff states that he did not sign any consent form to allow the medical Defendants to perform any procedures on him. Plaintiff was conscious, and he pleaded with the nurse to discontinue the "sadistic torture." As Nurse Sara attempted to catheterize Plaintiff, Plaintiff kicked and screamed for help, so Deputy Jenkins tightened the restraints.

Nurse Sara then moved Plaintiff to the CAT scan area. Plaintiff alleges that he was teased and mocked. After the CAT scan was performed, Plaintiff was taken back to the emergency examination room. A doctor came into the room. Plaintiff was then unrestrained, the IV and catheter were removed, shackles were removed and he was taken off the gurney. The nurse asked questions, and Plaintiff still had not signed a consent form. Two medical personnel checked vital signs. Plaintiff was then walked to the patrol car and returned to the Orange County Jail.

At the jail, Plaintiff was placed in cell #119. Cell #119 is the "Rubber Room" with a hole in the floor for a toilet. Plaintiff says he was told by several officers to drink from the toilet. He was in the cell for three days. Officer Durham was especially rude and disrespectful and called Plaintiff a "Bitch" who liked running around naked. Officer Durham slammed the feeder flap shut on several occasions to keep Plaintiff from getting fresh air. He was not allowed a shower for four days or fresh clothing. Plaintiff was not allowed to talk to Lt. Lankford, who was in charge. On March 12, 2007, Plaintiff was transferred from the Orange County Jail and taken to the Forsyth County Jail. He was placed on the Mental Ward under evaluation. Plaintiff states he was mistreated there as well, and was not

-3-

Case 1:07-cv-00381-NCT-PTS   Document 57   Filed 06/22/10   Page 3 of 11

interviewed or diagnosed. He states that the Orange County Jail medical staff may have poisoned him and did not tell him about side effects of Ativan.

All Defendants have responded to the complaint by filing motions to dismiss for failure to state a claim. Plaintiff has responded in opposition and filed a motion for summary judgment in his favor.

The Rule 12(b)(6) Standard

Dismissal is proper under Rule12(b)(6) where a plaintiff fails to plead a short and plain statement of the claim showing the pleader is entitled to relief. *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). For the purposes of Rule 12(b)(6), the Court is not required to accept as true the legal conclusions set forth in a plaintiff's complaint. *District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," as opposed to merely conceivable on some undisclosed set of facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Specifically, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (citations omitted). *See also Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009). The Court has a duty to liberally construe the allegations of the *pro se* Plaintiff. Nonetheless, the Court is not required "to conjure up questions never squarely presented" and "cannot be

-4-

expected to construct full blown claims from sentence fragments. . . ." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985.)

Discussion

The *pro se* complaint filed by Plaintiff Tolson does not clearly identify the causes of action he intends by his allegations. Nonetheless, the Court construes that Plaintiff has attempted to sue the "medical Defendants" – Orange County Jail Nurse Williams, Durham Regional Hospital, and Nurse Sara – on a claim of deliberate indifference to a serious medical need of Plaintiff. The leading case concerning the provision of medical service to prisoners is *Estelle v. Gamble*, 429 U.S. 97 (1976), where the United States Supreme Court held that prison officials could be liable in damages to a prisoner only if they were *deliberately indifferent* to a *serious* medical need of the prisoner.[2] The Court noted, however, that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner," *id.* at 106, and that mere negligence on the part of prison officials, or negligence by a prison physician in diagnosing a condition or treating a prisoner, does not state a claim of medical mistreatment under the Eighth Amendment. *Id*. at 105-06. The Supreme Court has indicated that the type of conduct on the part of prison officials that is proscribed by the Eighth Amendment is "obduracy and wantonness" rather than ordinary lack

---

[2] Plaintiff Tolson was a pretrial detainee at the time of the incidents he describes. As such, his claims are evaluated under the Due Process Clause, under which his rights are at least coextensive with the Eighth Amendment rights of a convicted prisoner. *See Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992).

of due care. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The United States Court of Appeals for the Fourth Circuit has repeatedly emphasized that mere negligence by a physician or disagreement between a prisoner and a physician concerning treatment does not support a constitutional claim. *See Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

It is apparent from the summary of allegations set forth above that Plaintiff has stated no cognizable claim against the medical Defendants. Plaintiff obviously disagrees with the nature of the treatment he received, but that disagreement alone cannot form the basis for a claim of constitutional dimension. He complains that Nurse Williams should have "checked him" to see if he might have an adverse reaction to Ativan, but such a claim is at most a claim of medical malpractice. Similarly, Plaintiff complains of a lack of a consent form at the Durham Regional Hospital, but his own description of the events in question demonstrates that the medical Defendants were facing an emergency situation regarding an apparent drug reaction, and, in any event, the lack of a consent to treatment by Plaintiff could give rise only to state law claims, not to a constitutional claim of deliberate indifference. Clearly, under Plaintiff's own allegations, there was no failure to treat or obduracy on the part of the medical Defendants. In sum, there is no allegation that raises a plausible inference that any medical Defendant disregarded a serious medical need of the Plaintiff. *See generally*

*Farmer v. Brennan*, 511 U.S. 825 (1994). The motions to dismiss should be granted as to Defendants Williams, Sara, and the Durham Regional Hospital.[3]

With regard to Officer Durham, Plaintiff Tolson alleges verbal abuse, including cursing and slanderous remarks, resulting in a violation of Plaintiff's "human rights." (Addendum to Compl. ¶ 3.) Such allegations of verbal abuse, however, without more, fail to state a constitutional claim. *See Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979). Officer Pittman is said to be a female officer who dispensed medicine without any medical background and "could have easily given me the wrong medicine." (*Id*. ¶ 4.) This allegation states no constitutional claim; there is no allegation that Officer Pittman disregarded instructions of a physician or a nurse regarding medications to be dispensed or made medical judgments regarding prescription drugs to be administered. The motions to dismiss filed by Officers Durham and Pittman should be granted.

As to Deputy Jenkins, Plaintiff Tolson alleges excessive use of force in restraining the Plaintiff while he was being attended by medical personnel. Specifically, Plaintiff alleges that, "[Deputy Jenkins] violated my rights by excessive force, inappropriate behavior becoming of a law enforcement officer by: verbally abusing Plaintiff, by hostilely and violently restraining Plaintiff; which resulted in bruises, lacerations, and blood seeping from

---

[3] Plaintiff originally named Duke University Medical Center as the hospital Defendant, but Durham Regional Hospital is the proper identification of the Defendant. *See* Docket No. 36, Declaration of John A. Legge.

-7-

Plaintiff's left ankle. Deputy Jenkins show of excessive, and overly-aggressive behavior resulted in me having bruises on my body from the leather restraints and Deputy Jenkins pressing down upon the ankle shackles." (*Id*. ¶ 7.)

It is well settled that the Eighth Amendment's prohibition against "cruel and unusual punishment" applies to the treatment of prison inmates by prison officials. The Amendment forbids "the unnecessary and wanton infliction of pain." *Whitley*, 475 U.S. at 319. With regard to pretrial detainees like the Plaintiff, the Fourteenth Amendment provides protection against the use of excessive force by jailors and guards. *See United States v. Cobb*, 905 F.2d 784 (4th Cir. 1990). A pretrial detainee has the right to be free from the use of excessive force that amounts to punishment. *Id*. at 788.

Review of the complaint shows that Plaintiff's factual allegations do not raise a plausible claim of use of force by Deputy Jenkins that amounts to punishment. In the first place, Plaintiff describes only *de minimis* injuries related to the pressure applied by Deputy Jenkins to Plaintiff's ankle bracelets and leather restraints. More significantly for purposes of the Court's "plausibility" review, Plaintiff himself describes that this pressure was applied by Deputy Jenkins during the administration of medical procedures upon Plaintiff by medical staff, which procedures Plaintiff was actively and strongly resisting. Plaintiff acknowledges that the increase in pressure of which he complains was to "keep him from moving." (Compl. § V, ¶ 3.) Plaintiff also describes that during this time he "began to kick, scream for help and so finally Deputy Jenkins increased his grip on my left ankle, which resulted in a

3 inch bruise, cuts/lacerations from the ankle bracelets, due to the fact I had no socks on." (*Id.* ¶ 7.)

It is apparent that Plaintiff's claim of excessive force by Deputy Jenkins cannot survive Rule 12(b)(6) review. Plaintiff's own allegations show that the minimal force used by Deputy Jenkins was not for the purpose of punishing Plaintiff but was in response to a request from medical staff to keep Plaintiff from moving and kicking while treatment was being administered. No inference of the use of force for the mere purpose of punishment can plausibly arise from the allegations of the complaint. The motion to dismiss filed by Deputy Jenkins should be granted.

With regard to Defendant Sheriff Pendergrass, Plaintiff Tolson alleges that the Sheriff ordered him held in cell #119 with no water to drink, no shower for four days, cold food, and no cleaning of the cell while he was locked down from March 9 to March 12, 2007. Plaintiff alleges that Lt. Lankford was a conspirator to deny basic human decency to Plaintiff while he was in cell #119.

Confinement conditions of pretrial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). If a restriction is imposed upon a detainee for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish, it will be upheld. *Id.* at 538.

On review of the pleadings, the Court cannot determine at this early stage whether the restrictions placed upon Plaintiff during his confinement in cell #119 were punitive in nature

or were for a legitimate non-punitive purpose. A factual record must be developed. Accordingly, the cell #119 "conditions of confinement" claim of Plaintiff Tolson against Defendants Pendergrass and Lankford survives the motion to dismiss filed by those parties. The parties will be given an opportunity for discovery as to this claim.

Conclusion

For reasons set forth above, **IT IS RECOMMENDED** that the motion to dismiss filed by Defendants Nurse Sara and Durham Regional Hospital (Docket No. 35) be granted in full; the motion to dismiss filed by Nurse Williams (Docket No. 34) be granted in full; and that the motion to dismiss filed by Defendants Pendergrass, Lankford, Jenkins, Durham, and Pittman (Docket No. 38) be granted as to Defendants Jenkins, Durham, and Pittman, and denied as to Defendants Pendergrass and Lankford. **IT IS FURTHER RECOMMENDED** that Plaintiff's motion for summary judgment (Docket No. 45) be denied since Plaintiff has stated no cause of action against many of the Defendants, as set out above, and factual issues are presented in his claims against Defendants Pendergrass and Lankford.

In view of the Recommendation regarding the claim against Defendants Pendergrass and Lankford, **IT IS ORDERED** that the parties may have discovery of each other *on that claim only* under the Federal Rules until October 15, 2010, with all discovery served in timely fashion so that responses become due on or before October 15.

This the  22nd  day of June, 2010.

                              /s/ P. Trevor Sharp
                           United States Magistrate Judge